Good morning. I'm John Rhodes from the Missoula office of the Federal Defenders of Montana. I represent John Sheehan. In August of 2002, Mr. Sheehan traveled with his wife and his then approximately 14-year-old stepdaughter to northwest Montana. He raped his stepdaughter on a nearly daily basis, culminating with her giving birth to his daughter and granddaughter in November of 2003. The state of Montana prosecuted and convicted him of incest. In 2008, he received a sentence of 25 years with 10 years suspended. The federal government then charged Mr. Sheehan with traveling across state lines to commit an illicit sexual act. He pled guilty to that, and the issue today and the issue at sentencing below was whether or not the relevant conduct of the incest conviction by the state of Montana served to enhance his federal guideline sentence. Is he still incarcerated in the state prison? Yes. I talked to Mr. Sheehan last week. He's in Deer Lodge, the Montana state prison. He's in phase one of the sex offender treatment program. When is his expected release date from state prison? His earliest release date, I believe it would be July of 2012, but before then he would have to complete phase one of the treatment program and phase two. Phase two is the longer program, so I think at a practical level he's not going to be released by July of 2012, but it may be sometime shortly after that. And I will say I've represented dozens of clients who are at Deer Lodge, the Montana state prison. They are then written into federal custody for a federal prosecution. They get sentenced federally. They're returned to Deer Lodge, and typically the clients are paroled at the earliest possible time because I think the state's attitude is we'll let the federal government pay for their incarceration. The issue on appeal is whether or not Mr. Sheehan's state incest conviction served to enhance his federal sentence. The government concedes that the state incest conviction was relevant conduct, but it maintains that it did not enhance his sentence. The fact is it did, however, because he received guideline enhancements based on the age of his daughter. She was between 12 and 16 during both the state and the federal offense. And he received a guideline enhancement based on his relationship with his daughter, the fact that she was his stepdaughter. It wasn't just because of the conviction. He has a breathtaking record. There were plenty of convictions to put him at level six. In what way did it enhance his sentence? It enhanced his offense level computation. It did not affect his criminal history because the criminal history guideline 4A1.2 excludes from scoring any conviction that is part of the federal conviction, and that actually proves our point. 4A1.2 of the guideline defines a prior sentence, means a sentence imposed on a prior to sentencing on the instant offense other than a sentence that is for conduct that is part of the instant offense. And then it goes on to explain that conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of 1B1.3. The government's maintaining an illusory distinction between offense of conviction and relevant conduct. That guideline explains that the instant offense is relevant conduct. The relevant conduct guideline is incredibly sweeping in its definition, and overwhelmingly that works to the detriment of my clients and criminal defendants across the country. But in this instance, the sweeping definition of relevant conduct, which includes acts that may or may not be part of the offense of conviction, but also subsumes the offense of conviction, demonstrates that the incest conduct, the fact that he raped his daughter and she was between 12 and 16 years of age, served to enhance his federal sentence. To me, the easiest way to look at it is going back to our childhood years when we were taught about Venn diagrams in math class, and in essence, relevant conduct is a large circle. And subsumed within that circle, encompassed within it, is the offense of conviction. So the idea that somehow there's a distinction between offense of conviction and relevant conduct, that's simply not true. That is one argument proffered by the government. The other is that in order for the incest conviction to enhance the federal guideline calculation, there has to be an increase for a sexual relationship or any of the sexual acts. First, that's not the law, going back to the definition of relevant conduct. Second, while there was not an enhancement for the sexual acts, there was an enhancement for the relationship. It's undisputed that Mr. Sheehan's sentence was enhanced because he was the father of his stepdaughter. Another way to look at it is if you look at the statutory elements of 2423 subsection A, crossing state lines with the intent to commit an illegal sexual act, there's nothing in there that says you have to be a parent of the victim. The district judge, though, specifically indicated in his order that the, and I'm reading here, it also correctly determined, referring to the pre-sentence report, determined that the sentence need not be imposed concurrently under section 5G1.3B because the relevant incest conduct did not serve to increase the defendant's offense level. Is the district court wrong in that? Yes. And why? Because, again, you look at the sweeping definition of relevant conduct. But look at the calculation that the court made. The district court was looking at the calculation included in the pre-sentence report. And from at least the district judge's perspective, there was no increase as a result of the defendant's offense level. I understand the sweeping argument. I mean, the relevance issue and so on. But why is the district court wrong? The district court would have been correct if there was not an incest prosecution and conviction. But here, there was. And that incest conviction qualifies as relevant conduct. And the facts of that incest conviction enhanced the guideline calculation. Even though it's not denominated as such? It's not denominated as such. In other words, it's not referred to as incest and so on. Is that what you're saying, that even though the nomenclature is different, that it still enhanced it? Yes. But the nomenclature, while different, everyone, when they hear the word incest, you think of family. And here, there was a two-level enhancement because of the parental relationship. So although the word incest was not used, it was the incest facts that enhanced the sentence. I'd like to reserve my remaining time for rebuttal. Okay. Thank you. Good morning. May it please the court. I'm Marcia Hurd, and I'm an assistant U.S. attorney in the District of Montana Billings Office. I handled this case below, and I wrote the brief. The real issue here is the fact that had Mr. Sheehan never been prosecuted in state court for incest, his advisory guideline range would have been exactly the same. His sentence would have been exactly the same. He got no criminal history upward departure. He got no points for that conviction. And there was nothing about the fact that he was prosecuted in state court for having sex with his stepdaughter in Montana. None of that increased his offense level in any fashion. What increased his offense level was the fact that she was between the ages of 12 and 16, and he received a two-point enhancement for that. And he received a two-point enhancement for being her parent, guardian, or legal custodian. The bottom line is, had he never been prosecuted in the state of Montana, and had there been no issue about concurrent, consecutive, his guideline would have been the same. So there's no way for this court to be able to say, and no way for the defense to be able to say, that it made any sort of a difference in the calculation of his guideline. What 5G1.3 was meant to do, as we hear from the Witte case, it was designed to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase the sentence, so that we have an eye towards the punishment being approximately the same if the sentences had been opposed at the same time, for the same course of conduct. We don't want to punish someone excessively for one particular episode. I think the defense argument is that incest necessarily means you're the parent of the... and therefore, that's exactly what's occurring. Well, but the reality is, you could be an ancestor or descendant, a brother or sister of the whole or half blood, a stepdaughter or a stepson, whether by blood adoption or step relationship. I recognize that. I think in this case, it is fair to say that because he was the parent, that it is the same conduct, isn't it? I'm not necessarily disagreeing with you, but I think we have to start from that spot, don't we? He received a two-point enhancement for that. But the reality is, if he'd never been prosecuted in the state of Montana, he would have still gotten that. Oh, I understand that. But I think what defense is saying, and I just want to make sure we're focused here, is that he was prosecuted and he was punished for that. He was. And therefore, it's defense claim that then this is adding on for the same conduct. Sure. And I think what I would say to that is... Assuming that's right, tell me why that's impermissible, or permissible, I should say. Well, and I guess I can't assume that that's right, but even if I assume it's right, it's permissible in this case because what he was punished for in the federal system was starting in 2000 and taking this girl through about five different states with the intent that one of the two of them engage in illegal sexual activity. That stopped when the family settled in Montana. What he was prosecuted for in the state court was having an incestuous sexual relationship with his stepdaughter in Montana that resulted in her pregnancy. So basically, the state did not punish him for the years of him transporting her all around the country, keeping her out of school, away from anybody who could help her. And the federal system did not punish him for having sex with her. If, in fact, there had been a two-point or a four-point enhancement under the guidelines for the actual sexual activity, which occurs in some of our cases, coercion and enticement and some of those others, then the government has no argument. Because then he is punished for the same thing. Yes, I mean, if it's all interstate activity, then it's completely different, isn't it? It is. And in that case, I think Mr. Rhodes has a pretty good argument, wouldn't you say? Yes, in that situation. But in this situation, he could have taken her through all of those states with the intent that one of the two of them engage in sexual activity, but no sex actually take place. I mean, we have cases in which people are transported across the state lines, but they're arrested before any sexual activity can take place. It is the intent, not the actual activity, that causes this to be an illegal activity. Where in the state system, you have to actually either attempt or have the sexual intercourse or some sort of sexual contact with an ancestor in order to be convicted. And I think that's the huge difference here. He was not ever punished in the federal system for having sex with his stepdaughter. He was not ever punished in the state system for transporting her, of course, across state lines. And so there is no overlapping there. There was no double dipping in some sense or punishing him twice for the same type of conduct. And the Armstead case that the defense cites significantly, that case really isn't as on point because the district court didn't even consider, didn't talk about at all the 5G 1.3 recommendation in the pre-sentence report and failed to justify why it didn't consider that. And so this court sent it back on plain error review. But interestingly, what the court said in that case, and I think it was 2008, was that you must consider that a fact or explain why you're not going to, because the guidelines are now advisory, explain why you're not going to follow that advisory guideline recommendation for concurrence or consecutive. And I think in this case, the district court was very clear about what it thought about Mr. Sheehan, about his extensive criminal record, about what he had done to this young lady, and about where he found himself. And I doubt that a remand, and in order to look at 5G 1.3 or to say that it should run concurrent, would withstand because the guidelines are now advisory. And Armstead says district court just has to let the parties know why it's not following that statute. And the district court specifically referred to that section, did it not, in making those calculations? Absolutely. There was a number, quite a bit of discussion about it because it was in the pre-sentence report. The parties briefed it ahead of time. The district court issued kind of a proposed opinion. We talked about it at sentencing, and then there was a final order that came out as well. And he said as a factual matter, which is reviewed for an abuse of discretion, this simply didn't add to his advisory guideline range. Any other questions from the panel? No further. Thank you. Thank you. Starting with the suggestion that the court should engage in harmless error review, I'll file a 28-J letter next week. But now when there's been a miscalculation of the guidelines, which there was here. I think you're just making a practical observation that on remand, as in many of these cases, and we do remand some of these cases, it's true, but you can come up with the same result without the legal error, if you will. Now what about the interstate versus? It seems to me there is a difference between interstate activity and intrastate activity. Why do you think this is solely based on intrastate activity? Because the government keeps saying Mr. Sheehan was not punished by the federal government for engaging in sex. It's now omitted sexual relationship because there was a relationship that enhanced his guideline sentence. Was it the intrastate sex or the interstate sex that he was punished by the federal government? The federal government's punishing him for crossing the state lines with the intent to engage in an illegal sexual act. And at the outset, the government wanted to rely on the fiction that if there wasn't a state prosecution, we wouldn't have a problem. Well, we wouldn't have a problem. And then the government keeps saying we're not punishing Mr. Sheehan for engaging in sex. But the state punished Mr. Sheehan for being the father of the victim, and the state punished Mr. Sheehan because the victim was between 12 and 16 years old, and that's exactly what the federal guidelines are punishing Mr. Sheehan for. So in that regard, whether it's interstate or intrastate, he's being punished by both sovereigns for the same facts. Well, is that really true? I mean, the federal indictment in this case, I believe, traced the whole history of going through Arizona or New Mexico or wherever it was and the sex that he had there and so on. It does not focus on the Montana portion, does it? Yes, it alleges that the criminal activity occurred from 1999 until 2003. It lists a series of western states culminating in Montana. It's undisputed that Mr. Sheehan moved to Montana with his family in August of 2002. So from your perspective, it covers everything, including the Montana portion, and therefore we can't really separate it in the way that the government proposes. Absolutely. There is a risk if we remanded that he would get a higher sentence. Yes, generally, if it's a general remand, that is an issue. I assume he's willing to take that risk. I spoke with Mr. Sheehan last week. You don't need to divulge the conversation. Yes, I've spoken with Mr. Sheehan. I have a very good relationship with him. We've discussed the pros and cons of pursuing this. With respect to the government's cite to Witte, the Supreme Court case commenting on 5G 1.3 and the purposes behind 5G 1.3, I want to read from Kimball. It's a Ninth Circuit case from 1997, I believe was the year. It says, quote, Section 5G 1.3 subsection B was adopted to address the unfairness that would result from receiving a second sentence for activities which were considered as relevant conduct in a prior proceeding, end quote. Then it cites Witte. That's exactly what happened here. Now, whether it ultimately proves to be unfair perhaps remains to be seen. But the fact is, as a matter of guidelines protocol, the guidelines were miscalculated, and therefore this court should vacate the sentence and remand for resentencing. Thank you, counsel. The case is dogged and be submitted for decision.
judges: Hogan, Thomas, Smith M.